IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER MILLER and SARAH MILLER, | ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 12-0706-WS-B |
| | ) |
| VISIONARY HOME BUILDERS, INC., AMERICAN SAFETY INDEMNITY COMPANY, and CASTLEPOINT NATIONAL INSURANCE COMPANY f/k/a SUA INSURANCE COMPANY, | ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANT CASTLEPOINT NATIONAL INSURANCE COMPANY f/k/a SUA INSURANCE COMPANY'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant CastlePoint National Insurance Company f/k/a/ SUA Insurance Company, pursuant to Local Rule 7.1 and 7.2 and hereby provides this Brief in support of its Motion to Dismiss or, in the alternative, Motion for Summary Judgment.

## UNDISPUTED FACTS

1.  On February 27, 2013, Plaintiffs filed their First Amended Complaint.  Said First Amended Complaint is brought by Plaintiffs against Visionary Home Builders, Inc. f/k/a Bay Area Home Builders, Inc. (hereinafter "Visionary"), American Safety Indemnity Company (hereinafter "ASIC") and CastlePoint National Insurance Company f/k/a/ SUA Insurance Company (hereinafter "SUA") pursuant ALA. CODE § 27-23-2 (1975).  (See First Amended Complaint).

2.  In pertinent part, Plaintiffs' First Amended Complaint makes the following factual allegations:

    a.  that in early 2007 they contracted with Visionary for construction of a modular home (First Amended Complaint ¶ 6);

    b.  that in compliance with the requirements of Alabama Manufactured Housing Commission (hereinafter "AMHC") Rules 535-X-15.01 et seq., and for the protection of consumer homeowners, Visionary obtained and had in place two commercial general liability policies:

(1) SUA insurance policy number 10AUICP-002747-GL01 with an effective period of November 16, 2006 to November 16, 2007;

(2) ASIC insurance policy number 156AUI12433-00 with an effective period of November 28, 2007 to July 30, 2008 (First Amended Complaint ¶ 7);

c. that as a result of the modular home contract and construction Plaintiffs filed a State Court cause of action (Circuit Court of Baldwin County Civil Action No. 2008-700) against Visionary and others (First Amended Complaint ¶ 8);

d. that CV 2008-700 was compelled to arbitration (First Amended Complaint ¶ 8);

e. that SUA and ASIC were notified of the litigation and failed to defend and/or indemnify Visionary in connection with said litigation (First Amended Complaint ¶ 10);

f. that Plaintiffs obtained an Arbitration Award against Visionary (First Amended Complaint ¶ 11);

       g.   that on May 18, 2011, the Circuit Court of Baldwin County entered the Arbitration Award as a final Judgment (First Amended Complaint ¶ 13); and

       h.   that as of the date of the First Amended Complaint, Defendants have failed to satisfy the judgment. (First Amended Complaint ¶ 14).

3.   Plaintiffs' First Amended Complaint states two causes of action against SUA.  (First Amended Complaint ¶¶ 26-36).

4.   Count Three of Plaintiffs' First Amended Complaint, titled "Action to Apply Insurance Coverage Pursuant to Alabama Code § 27-23-2" claims that Plaintiffs "are entitled to have the insurance money" provided for in the SUA and Visionary insurance contract applied to the satisfaction of Plaintiffs' judgment against Visionary (First Amended Complaint ¶29).

5.   Count Four of Plaintiffs' First Amended Complaint, sets forth a cause of action against SUA for "Breach of Contract—Third Party Beneficiary."  (First Amended Complaint ¶¶ 31-36).

6.   SUA issued a policy of insurance, policy number 10AUIAG-002747-GL01[1] (hereinafter "the Policy"), to Visionary.  The policy period was "FROM 11/16/2006 TO 11/16/2007." (Def. Ex. 1, Commercial General Liability Declarations, Page 1 of 2).

7.   The Policy contains the following insuring agreement:

> **SECTION I – COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
>
> (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

---

[1] Plaintiffs' First Amended Complaint incorrectly identifies the SUA policy as "Policy No. 10AUICP-002747-GL01

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)** The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

      **(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or any Extended Reporting Period we provide under Section **V** – Extended Reporting Periods.

    **c.** A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

      **(1)** When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

      **(2)** When we make settlement in accordance with Paragraph **1.a.** above.

    All claims for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury", will be deemed to have been made at the time the first of those claims is made against any insured.

    All claims for damages because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of those claims is made against any insured.

(Def. Ex. 1, Commercial General Liability Coverage Form, Page 1 of 17, SECTION I — COVERAGES ¶ 1).

8.   The Policy contains the following notice requirements:

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

Notice of an "occurrence" or offense is not notice of a claim.

b. If a claim is received by any insured, you must:

(1) Immediately record the specifics of the claim and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit";

(Def. Ex. 1, Commercial General Liability Coverage Form, Page 10 of 17, SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS ¶ 2.).

9.    SUA did not receive notice of any occurrence, offense which may result in a claim, or claim under SUA Policy Number 10AUIAG-002747-GL01 until October 15, 2009. (Def. Ex. 2, ¶ 4).

10.   On October 15, 2009, SUA received a copy of the letter from attorney David C. Hilyer dated October 9, 2009 demanding SUA indemnify and defend his client

Nationwide Custom Homes, Inc. in the State Court Action. (Def. Ex. 2, ¶ 3 and Ex. A thereto).

11. The letter received on October 15, 2009 was SUA's first notice of any occurrence, offense which may result in a claim, or claim against Visionary under SUA Policy Number 10AUIAG-002747-GL01. (Def. Ex. 2, ¶ 4).

12. Visionary's first notice of a possible loss was received, at the earliest, on November 26, 2007. (Def. Ex. 2, ¶ 6).

13. On November 24, 2009, SUA notified Visionary that the claim was denied. (Def. Ex. 2, ¶ 7).

## **LEGAL STANDARD**

The following legal Standard is applied to a Motion brought pursuant to Rule 12(b)(6):

> In order to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must as a threshold matter provide "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by Rule 8(a)(2). *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964-65 (2007). Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level...." *Id.* Thus, neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffices to satisfy Rule 8(a)(2). *Id.* at 1965. "Stated differently, the factual allegations in a complaint must 'posses enough heft' plausibly to

suggest that the pleader is entitled to relief....
Facts that are 'merely consistent with' the
plaintiff's legal theory will not suffice when,
'without some further factual enhancement [they]
stop short of the line between possibility and
plausibility of "entitlement to relief." ' "
*Weissman v. National Association of Securities
Dealers, Inc.,* 500 F.3d 1293, 1310 (11th Cir.2007)
(quoting *Twombly,* 127 S.Ct. at 1966).

If, but only if, "a claim has been stated
adequately [under Rule 8(a)(2) ], it may be
supported by showing any set of facts consistent
with the complaint." *Twombly,* 127 S.Ct. at 1969
(explaining *Conley v. Gibson,* 355 U.S. 41, 45-46
(1957)). That is, "[a] motion to dismiss [for
failure to state a claim] may be granted only when
a defendant demonstrates beyond doubt that the
plaintiff can prove no set of facts in support of
his claim which would entitle him to relief."
*Kirwin v. Price Communications Corp.,* 391 F.3d
1323, 1325 (11th Cir.2004) (internal quotes
omitted). "When considering a motion to dismiss,
all facts set forth in the plaintiff's complaint
are to be accepted as true and the court limits
its consideration to the pleadings and the
exhibits attached thereto." *Grossman v.
Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th
Cir.2000) (internal quotes omitted).

<u>Mallory v. GMS Funding, LLC</u>, CIV.A.07-0680-WS-C, 2008 WL

276578 (S.D. Ala. Jan. 30, 2008).

A District Court Judge has the discretion to determine

whether to consider matters outside the pleadings when

faced with a Motion to Dismiss or in the Alternative Motion

for Summary Judgment.

The Federal Rules of Civil Procedure provide that whenever a defendant files a motion to dismiss for failure to state a claim upon which relief can be granted, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Rule 12(b)(6), Fed.R.Civ.P.; *see also Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1260 n. 2 (11th Cir.2006) ( "Normally, once the court decides to accept matters outside the pleading, it must convert the motion to dismiss into one for summary judgment.") (citation and internal quotation marks omitted); *Day v. Taylor,* 400 F.3d 1272, 1275–76 (11th Cir.2005) ("The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint."). But it is not mandatory that the Court consider matters outside of the pleadings at this time; rather, the decision of whether or not to do so is a matter of discretion. *See Jones v. Automobile Ins. Co. of Hartford, Conn.,* 917 F.2d 1528, 1531–32 (11th Cir.1990) ("It is within the judge's discretion to decide whether to consider matters outside of the pleadings that are presented to the court.").

Lay v. Hixon, CIVA 09-0075-WS-M, 2009 WL 825814 (S.D. Ala.

Mar. 26, 2009).

The legal standard to be applied to a Motion for

Summary Judgment is as follows:

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th

Cir.1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id.* "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id.; accord Mullins v. Crowell,* 228 F.3d 1305, 1313 (11th Cir.2000); *Sammons v. Taylor,* 967 F.2d 1533, 1538 (11th Cir.1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1116 (11th Cir.1993); *accord Mullins,* 228 F.3d at 1313; *Clark,* 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick,* 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark,* 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed.R.Civ.P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion....").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant...." *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 (11th Cir.2003).

Hawk v. Klaetsch, CIV.A. 12-0058-WS-B, 2012 WL 6569286
(S.D. Ala. Dec. 14, 2012).

## ARGUMENT

Plaintiffs' claims against SUA are brought pursuant to
ALA. CODE § 27-23-2 (1975). (First Amended Complaint). ALA.
CODE § 27-23-2 (1975) gives judgment creditors who first
recover a final judgment against an insured the right to
have the insurance proceeds provided for in the contract of
insurance applied to the satisfaction of the judgment. See
ALA. CODE § 27-23-2 (1975). Under Alabama law, claims
brought pursuant to ALA. CODE § 27-23-2 (1975) are subject to
the defenses that an insurer would have against the
insured. The Supreme Court of Alabama stated the following
regarding ALA. CODE § 27-23-2 (1975):

> A claim under §§ 27-23-1 and -2 to apply the
> proceeds of a contract of insurance to satisfy a
> judgment has been described by [The Supreme Court
> of Alabama] as follows:
>
>> "Under Alabama law, the injured party acquires
>> a vested interest (secondary) in the nature of
>> a hypothecation of the insured's rights under
>> the policy.
>>
>> "....
>>
>> "Once an injured party has recovered a
>> judgment against the insured, the injured
>> party may compel the insurer to pay the
>> judgment. The injured party, however, can

> bring an action against the insurer only after
> he has recovered a judgment against the
> insured and only if the insured was covered
> against the loss or damage at the time the
> injured party's right of action arose against
> the insured tort-feasor."

> *Maness v. Alabama Farm Bureau Mut. Casualty Ins.
> Co.,* 416 So.2d 979, 981-82 (Ala.1982). The injured
> party's "vested interest" is subject to the
> further qualification that **"the terms of the
> policy imposing obligations on the insured are
> effective as against the injured party."** *George v.
> Employers' Liab. Assurance Corp.,* 219 Ala. 307,
> 310, 122 So. 175, 177 (1929); *see James &
> Hackworth v. Continental Casualty Co.,* 522 F.Supp.
> 785, 787 (N.D.Ala.1980). Thus, **defenses to
> liability available to the insurer in an action
> brought by the insured would also be available to
> the insurer in an action brought pursuant to §§
> 27-23-1 and -2 by the injured party.** *Employers
> Ins. Co. v. Crook,* 276 Ala. 177, 183, 160 So.2d
> 463, 469-70 (1964); *Employers Ins. Co. v.
> Johnston,* 238 Ala. 26, 31, 189 So. 58, 62 (1939);
> *see Fleming v. Pan American Fire & Casualty Co.,*
> 495 F.2d 535, 541 (5th Cir.1974); *Southeastern
> Fire Ins. Co. v. Helton,* 192 F.Supp. 441, 444-45
> (S.D.Ala.1961).

Haston v. Transamerica Ins. Servs., 662 So. 2d 1138, 1139-

40 (Ala. 1995), (emphasis added), overruled on other

grounds by Travelers Indem. Co. of Connecticut v. Miller,

86 So. 3d 338 (Ala. 2011) ("we overrule Haston to the

extent that it purports to give a right to an injured party

who gives notice after a default judgment has been entered,

a right the insured would not have had nor have been

successful in pursuing.")

13

"If a policy provision is unambiguous, then a court must enforce the policy as it is written and cannot defeat express provisions, including exclusions from coverage." Auto Owners Ins. Co. v. American Cent. Ins. Co., 739 So.2d 1078, 1081 (Ala. 1999).

## I.   THERE IS NO COVERAGE AVAILABLE UNDER THE SUA POLICY BECAUSE THE INSURED, VISIONARY, FAILED TO PROVIDE TIMELY NOTICE OF THE CLAIM:

SUA did not receive notice of any occurrence, offense which may result in a claim, or claim against Visionary until October 15, 2009 which was well after the policy terminated on November 16, 2007. (Def. Ex. 2 ¶3-5).

In claims brought pursuant to ALA. CODE § 27-23-2 (1975), judgment creditors "are subject to [insurers] defenses against its insured, including the defense of lack of notice. See Nationwide Mut. Fire Ins. Co. v. Estate of Files, 10 So.3d 533, 534-35 (Ala.2008)." N. River Ins. Co. v. Overton, 59 So. 3d 1, 12-13 (Ala. 2010).

> "[T]he failure of an insured to comply within a reasonable time with such conditions precedent in an insurance policy requiring the insureds to give notice of an accident or occurrence releases the insurer from obligations imposed by the insurance contract." Reeves v. State Farm Fire & Cas. Co., 539 So.2d 252, 254 (Ala.1989). The term "as soon as practicable" has been interpreted "to mean that 'notice must be given within a reasonable time in

view of the facts and circumstances of the case.' " *Haston v. Transamerica Ins. Servs.,* 662 So.2d 1138, 1141 (Ala.1995) (quoting *Pharr v. Continental Cas. Co.,* 429 So.2d 1018, 1019 (Ala.1983)). "Prompt" notice has also been interpreted to mean that such notice must be given within a reasonable time in view of all the facts and circumstances. *St. Paul Fire & Marine Ins. Co. v. Elliott,* 545 So.2d 760 (Ala.1989). Only two factors are to be considered in determining the reasonableness of a delay in giving notice to the insurer: the length of the delay and the reasons for the delay. *United States Fid. & Guar. Co. v. Baldwin County Home Builders Ass'n,* 770 So.2d 72, 75 (Ala.2000). Whether notice of the occurrence or claim was given to the insurer within a reasonable time rests on the reasonableness of the delay. *Id.* Prejudice to the insurer from any such delay in providing notice is not a factor. *Id.*

Travelers Indem. Co. of Connecticut v. Miller, 86 So. 3d 338, 342 (Ala. 2011).

The purposes behind the requirements of timely notice of an occurrence and timely notice of any legal action is well settled in Alabama:

The purposes behind these two types of notice is well settled: An insurer must have timely notice of an event or occurrence in order to form an intelligent estimate of its rights and liabilities under the policy, to afford it an opportunity to investigate, to allow it to participate in the litigation, and to prevent fraud. *Pan American Fire & Cas. Co. v. DeKalb-Cherokee Counties Gas Dist.,* 289 Ala. 206, 266 So.2d 763 (1972). The purpose of a notice-of-lawsuit provision in an insurance policy is to give the insurer the opportunity to control litigation on which its contractual liability hinges. *North River Ins. Co. v. Overton,* 59 So.3d 1 (Ala.2010).

15

<u>Travelers Indem. Co. of Connecticut v. Miller</u>, 86 So. 3d 338, 347 (Ala. 2011).

The Supreme Court Alabama has held, as a matter of law, that "[a] five-month delay in giving notice is sufficiently protracted as to require the insured to offer evidence of a reasonable excuse for the delay." <u>Nationwide Mut. Fire Ins. Co. v. Estate of Files</u>, 10 So.3d 533, 536 (Ala.2008). Thus, where the delay in providing notice exceeds five months, the insured, or in the case of a case brought pursuant to <span style="font-variant: small-caps">Ala. Code</span> § 27-23-2 (1975) the judgment creditor, must submit evidence indicating a reasonable excuse.

The SUA Policy states that the insured "must see to it that we are notified as soon as practicable of an 'occurrence' or offense which may result in a claim." (Def. Ex. 1, Commercial General Liability Coverage Form, Page 10 of 17, SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS ¶ 2.a.). Further, the Policy states that "[i]f a claim is received by any insured, you must…[n]otify us as soon as practicable." (Def. Ex. 1, Commercial General Liability Coverage Form, Page 10 of 17, SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS ¶ 2.b.). Lastly, the Policy contains the following additional notice

requirement: "[y]ou and any other involved insured must...[i]mmediatley send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a 'suit'..." (Def. Ex. 1, Commercial General Liability Coverage Form, Page 10 of 17, SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS ¶ 2.c.).

The evidence is undisputed that SUA was not provided notice of any occurrence, offense which might result in a claim, claim or lawsuit until October 15, 2009 when it was presented with a demand for indemnity and defense by the attorney for Nationwide Custom Homes, Inc. (Def. Ex. 2 ¶¶3-4). Visionary received notice of a potential claim on or after November 26, 2007. (Def. Ex. 2 ¶6). This is almost a two year delay in providing notice, much greater than the five month period addressed by the <u>Files</u> court. Further, the insured, Visionary, did not give notice, the notice was received by a third-party seeking indemnification and defense under the Policy. There is absolutely no evidence, substantial or otherwise, that justifies the failure and/or delay in providing notice. As such, Visionary would not be entitled to coverage under the SUA Policy and SUA had no obligation to provide a defense

or indemnify Visionary.  Therefore, Plaintiffs have no right to any "insurance money" under the SUA Policy pursuant to ALA. CODE § 27-23-2 (1975).

Therefore, there is no genuine dispute as to any material fact and SUA is entitled to judgment as a matter of law pursuant to FED. R. CIV. P. 56.

## II. **PLAINTIFFS CANNOT BRING A DIRECT ACTION AGAINST SUA FOR THIRD PARTY BENEFICIARY:**

Plaintiffs' claims against SUA as set forth in Count Three and Count Four of the First Amended Complaint are essentially the same in that they request the same relief. However, to the extent that Plaintiffs' claims set forth in Count Four could be construed as a direct cause of action against SUA outside the relief afforded by ALA. CODE § 27-23-2 (1975), SUA makes the following brief argument.

Absent a direct action statute such as ALA. CODE § 27-23-2 (1975), Plaintiffs cannot maintain a direct cause of action against SUA.  See Howton v. State Farm Mut. Auto. Ins. Co., 507 So. 2d 448, 450 (Ala. 1987) (holding that a plaintiff could not bring a direct action against the alleged tortfeasor's liability insurer under a third-party-beneficiary theory).  To the extent that Plaintiffs claims could be construed as setting forth a claim for bad faith,

18

see Williams v. State Farm Mut. Auto. Ins. Co., 886 So. 2d 72, 74 (Ala. 2003) (Supreme Court of Alabama held that absent a new and independent obligation creating a direct contract between a third party and an insurer, a third party may not bring a bad-faith refusal to pay claim against an insurer.).   A third party may not maintain a direct action against the tortfeasor's insurer as such "is not permitted in Alabama. *Maness v. Alabama Farm Bureau Mutual Casualty Insurance Co.,* 416 So.2d 979, 982 (Ala.1982). This matter is properly addressed to the legislature." Stewart v. State Farm Ins. Co., 454 So. 2d 513, 514 (Ala. 1984).

### III. SUA'S COVERAGE DEFENSES ARE NOT AFFECTED BY AMHC MANDATORY INSURANCE REQUIREMENTS:

Plaintiffs in their First Amended Complaint state that "[i]n compliance with the requirements of Alabama Manufactured Housing Commission Rules 535-X-15.01 et seq., and for the protection of consumer homeowners, Visionary contracted with CastlePoint f/k/a SUA for a general liability policy that had an effective period from November 16, 2006 to November 16, 2007." (First Amended Complaint ¶ 28; see also ¶ 32)SUA, based on Plaintiffs' First Amended

Complaint, anticipates that Plaintiffs may argue that the AMHC mandatory insurance requirements serve as a sort of surety bond to protect the consumer homeowners and as such SUA is stripped of its defenses.  Therefore, SUA offers the following brief argument.

The purpose of the bonding and insurance requirement of AMHC rules "is to ensure that manufacturers, retailers, and installers are adequately bonded and insured to assist homeowners in situations when a manufacturer, retailer, or installer has gone out of business or failed to meet their legal or regulatory responsibility to the consumer."  Ala. Admin. Code r. 535-X-15-.01.  The AMHC rules do not provide for a direct cause of action by a homeowner against a manufacturer, retailer or installers' insurer.  While it is true that the AMHC rules require that a manufacturer/installer/transporter have general liability insurance, such requirement does not affect SUA's defenses and certainly does not turn the insurance policy into a surety.

First and foremost, the law in Alabama is clear that "defenses to liability available to the insurer in an action brought by the insured would also be available to

the insurer in an action brought pursuant to §§ 27-23-1 and
-2 by the injured party.  See Employers Ins. Co. v. Crook,
276 Ala. 177, 183, 160 So.2d 463, 469-70 (1964); Employers
Ins. Co. v. Johnston, 238 Ala. 26, 31, 189 So. 58, 62
(1939); Fleming v. Pan American Fire & Casualty Co., 495
F.2d 535, 541 (5th Cir.1974); Southeastern Fire Ins. Co. v.
Helton, 192 F.Supp. 441, 444-45 (S.D.Ala.1961) and  Haston
v. Transamerica Ins. Services, 662 So. 2d 1138, 1139-40
(Ala. 1995) overruled on other grounds by Travelers Indem.
Co. of Connecticut v. Miller, 86 So. 3d 338 (Ala. 2011).

In a factually similar case to the instant matter,  N.
River Ins. Co. v. Overton, 59 So. 3d 1, 12-13 (Ala. 2010),
a Mobile home purchaser who had been sued by the seller
counterclaimed against the seller and its agent and
obtained a default judgments totaling six million dollars.
The purchasers' counsel had given notice of the default
proceedings to the agent for the liability insurer for the
seller. Subsequently, the purchasers brought a garnishment
action against seller's insurer pursuant to Ala. Code § 27-
23-2 (1975) seeking to apply the proceeds of the seller's
liability insurance policy to the default judgment. The
trial court on cross motions for summary judgment granted

the purchasers' motion and entered judgment against the insurer for its five million dollar policy limit plus interest. The Supreme Court reversed and held that a genuine issue of material fact existed as to whether the insurer had notice of the purchasers' claim against the insured seller. N. River Ins. Co. v. Overton, 59 So. 3d 1 (Ala. 2010). In its decision, the Overton Court acknowledged that "[u]nder § 27-23-2, Ala.Code 1975, [the homeowners] are subject to [insurers] defenses against its insured, including the defense of lack of notice. *See* Nationwide Mut. Fire Ins. Co. v. Estate of Files, 10 So.3d 533, 534-35 (Ala.2008)." N. River Ins. Co. v. Overton, 59 So. 3d 1, 12-13 (Ala. 2010).

Therefore, the AMHC mandatory insurance requirements do not affect SUA's defenses and certainly do not turn the insurance policy into a surety.

## **CONCLUSION**

For the reasons stated above, Plaintiffs' First Amended Complaint fails to state a claim upon which relief can be granted against SUA and Plaintiffs' First Amended Complaint is due to be dismissed. In addition, there is no genuine

dispute as to any material fact and SUA is entitled to judgment as a matter of law.

    Respectfully submitted,


_David M. Wil_____

DAVID M. WILSON
(ASB-1797-n71d)
Attorney for Defendant
CastlePoint National
Insurance Company f/k/a
SUA Insurance Company

OF COUNSEL:
WILSON & BERRYHILL P.C.
One Metroplex Drive
Suite 250
Birmingham, Alabama  35209
Telephone (205) 252-4441
Facsimile (205) 252-0320
david@wilsonberryhill.com


## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing has been served upon all Counsel of Record in this cause by electronically filing in the CM/ECF system and/or by placing a copy of the same, properly addressed and postage paid, in the U.S. Mail on this the 21st day of June, 2013.

Mark D. Ryan, Esquire
W. Lee Webb, Esquire
Samuel K. Wilkes, Esquire
Attorneys for Plaintiffs
MARK D. RYAN, P.C.
P.O. Box 1000
Bay Minette, Alabama 36507
Telephone: (251) 580-0500
Facsimile: (251) 580-0655
mdr@mryanlaw.com

Michael S. Jackson, Esquire
Attorney for Defendant American
Safety Indemnity Company
JACKSON ANDERSON & PATTY, P.C.
250 Commerce Street, Suite 100
Montgomery, Alabama 36104
Telephone: (334) 834-5311
Facsimile: (334) 834-5311
mjackson@jaandp.com

_____
Of Counsel: