# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER MILLER, et al., | ) |
| Plaintiffs, | ) |
| v. | ) CIVIL ACTION 12-0706-WS-B |
| VISIONARY HOME BUILDERS, INC., et al., | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the motion of defendant CastlePoint National Insurance Co. ("CastlePoint") to dismiss or, in the alternative, motion for summary judgment. (Doc. 36). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 37, 42, 49, 50, 52-53, 55-57), and the motion is ripe for resolution.[1]

## BACKGROUND

According to the amended complaint, (Doc. 21), the plaintiffs contracted with defendant Visionary Home Builders, Inc. ("Visionary") for the construction of a modular home. When a dispute arose, the plaintiffs filed suit against Visionary in state court, which controversy was compelled to arbitration. Visionary had in place a commercial general liability ("CGL") policy ("the Policy") with SUA Insurance Company ("SUA"). SUA's holding company was acquired by another entity, which thereafter operated SUA as CastlePoint. The

---

[1] As noted in a previous order, (Doc. 51), CastlePoint's original brief and statement of proposed determinations of fact, conclusions of law and order of judgment, (Docs. 38, 39), have been superseded by amended versions, and the original versions will not be considered.

plaintiffs notified CastlePoint of the litigation, but CastlePoint failed to defend and/or indemnify Visionary. The arbitrator awarded the plaintiffs $650,000 plus expenses, and the state court entered judgment on this award.

The amended complaint includes two counts against CastlePoint, both seeking recovery of the judgment amount awarded against Visionary. Count Three seeks to recover benefits under the Policy pursuant to Alabama Code § 27-23-2, while Count Four alleges that CastlePoint breached the Policy, as to which contract the plaintiffs claim to be third party beneficiaries.[2]

## DISCUSSION

Because the parties have submitted evidence which the Court has not excluded but has considered, CastlePoint's motion to dismiss must be denied and only its alternative motion for summary judgment considered. Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

---

[2] The amended complaint asserts the same claims against co-defendant American Safety Indemnity Company ("American"), which insured Visionary under a CGL policy covering a different time period. American has settled with the plaintiffs. (Doc. 59).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[3] Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited. Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599

---

[3] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so.").

(11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

Moreover, "a passing reference to an issue in a brief [is] insufficient to properly raise that issue …." *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005). Conclusory assertions unaccompanied by evidence, explanation or authority thus present nothing for the Court to consider.

CastlePoint raises a number of arguments as to Count Three, including: (1) failure to provide timely notice; (2) lack of an occurrence; (3) lack of an occurrence within the policy period; and (4) various policy exclusions. CastlePoint's single argument as to Count Four is that the plaintiffs cannot maintain a direct action against it outside the bounds of Section 27-23-2.

**I. Count Three.**

The Policy assigns Visionary certain "duties in the event of occurrence, offense, claim or suit." Among them is a notice provision: "You must see to it that we are notified as soon as practicable of an 'occurrence' or offense which may result in a claim." The provision further provides that "[n]otice of an 'occurrence' or offense is not notice of a claim." Thus, "[i]f a claim is received by any insured, you must … [n]otify us as soon as practicable" and "must see to it that we receive written notice of the claim as soon as practicable." Moreover, "[y]ou and any other involved insured must … immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a 'suit' …." (Doc. 37, Exhibit 1 at 10).

"The failure of an insured to comply within a reasonable time with such conditions precedent in an insurance policy requiring the insureds to give notice of an accident or occurrence releases the insurer from obligations imposed by the insurance contract." *Travelers Indemnity Co. v. Miller*, 86 So. 3d 338, 342 (Ala. 2011) (internal quotes omitted). And the injured party is generally bound by the

insured's failure as well. "The injured party's vested interest [in a wrongdoer's insurance] is subject to the further qualification that the terms of the policy imposing obligations on the insured are effective as against the injured party. ... Thus, defenses to liability available to the insurer in an action brought by the insured would also be available to the insurer in an action brought pursuant to §§ 27-23-1 and -2 by the injured party." *Nationwide Mutual Fire Insurance Co. v. Estate of Files*, 10 So. 3d 533, 534-35 (Ala. 2008) (internal quotes omitted). This rule specifically applies to failures to provide notice to the insurer. *Id*.

The plaintiffs filed a complaint against Visionary with the Alabama Manufactured Housing Commission ("the Commission"), which forwarded the complaint to Visionary on December 11, 2007. (Doc. 53, Exhibit K). On December 21, 2007, the plaintiffs' lawyer wrote Visionary's lawyer demanding that Visionary complete the house. (*Id*., Exhibit L). On October 24, 2008, the plaintiffs filed suit against Visionary. (*Id*., Exhibit N).

The plaintiffs admit that Visionary, which defended the arbitration, was aware of the plaintiffs' claim. (Doc. 52 at 17). Despite this awareness, Visionary did not provide CastlePoint the required notice. It is uncontroverted that the first notice CastlePoint received concerning the occurrence and claim was received on October 15, 2009, when a co-defendant demanded that CastlePoint, as Visionary's insurer, defend and indemnity the co-defendant. (Doc. 37, Exhibit 2, ¶ 4 & Exhibit A thereto).

"The requirement of notice 'as soon as practicable' means that the insured must give notice within a reasonable time under all the circumstances." *Estate of Files*, 10 So. 3d at 535 (internal quotes omitted). "In making this determination, the only factors to be considered are the length of the delay in giving notice and the reasons therefor. Absence of prejudice to the insurer from the delay is not a factor to be considered." *Id*. (internal quotes omitted).

The delay here was, at a minimum, almost a full year. "A five-month delay in giving notice is sufficiently protracted as to require the insured to offer evidence

of a reasonable excuse for the delay." *Estate of Files*, 10 So.3d at 536. The plaintiffs, however, have offered no excuse. On the contrary, they concede they "have been unable to determine and thus cannot offer reasons as to why Visionary failed to give SUA timely notice." (Doc. 52 at 17).

Count Three is thus barred under the general rule by Visionary's failure to give notice. But the plaintiffs argue that two exceptions to the general rule exist and apply here, either of which, if accepted, would get them safely past the notice barrier.

### A. The "Required-by-Law" Exception.

The plaintiffs first invoke what they term the "required-by-law exception." (Doc. 52 at 11-15).[4] They argue that, pursuant to this exception, an insured's failure to comply with a condition expressed in the policy does not bar the injured party's suit against the insurer when the insured was legally obligated to carry such insurance for the protection of the public. They rely for this proposition on *Employers Insurance Co. v. Johnston*, 189 So. 58 (Ala. 1939), and *American Southern Insurance Co. v. Dime Taxi Service, Inc.*, 151 So. 2d 783 (Ala. 1963).

In *Johnston*, the insured held a permit, issued by the Public Service Commission ("PSC") pursuant to the Contract Motor Carrier Act ("the 1932 Act"), to operate as a contract motor carrier. 189 So. at 59. The 1932 Act required, as a condition of receiving such a permit, that the carrier have in place an indemnity bond or insurance policy "'for the protection of the public [not including passengers and shippers] in the collection of damages for which the carrier may be liable by reason of the operation of any motor vehicle subject to the provisions of this Act.'" *Id*. at 61 (quoting the 1932 Act). The PSC entered an order that all insurance policies must contain an endorsement acknowledging that

---

[4] The term appears in a secondary authority but not in the two cases on which the plaintiffs rely.

the policy was "for the protection of the public in the collection of damages for which the motor carrier may be liable by reason of the operation of the motor vehicle or vehicles insured," with the policy to be construed in accordance with the 1932 Act and PSC rules and regulations. *Id*. at 60. The subject policy contained this endorsement. *Id*.

After the plaintiff was injured, the insured violated the policy's cooperation clause. The insurer accordingly declined to defend, and judgment was entered in favor of the plaintiff and against the insured. 189 So. at 60. The plaintiff then filed suit against the insurer under the predecessor to Section 27-23-2. *Id*. at 59. Acknowledging the rule as expressed in *Estate of Files* and like cases, the *Johnston* Court explained that, by the insured's violation of the cooperation clause, "the liability of the insurer to the assured and through him to the injured party was forfeited and lost." *Id*. The question presented was whether "there is something here presented which operates to relieve this case from the effect of that principle." *Id*.

As with Section 27-23-2, its predecessor "did not extend to plaintiff a primary claim as a contractee of such policy"; instead, "[the] plaintiff's status was derivative and depended upon the liability of the insurer to the assured under the contract." 189 So. at 61. But if another statute granted the injured party primary rights under the policy, the injured party's rights would not be derivative of the insured's rights, and he could pursue relief under the predecessor of Section 27-23-2 regardless of the insured's violation of a policy condition. *Id*.

The *Johnston* Court concluded that the 1932 Act bestowed primary rights on injured parties. In reaching this decision, the Court repeatedly emphasized that the Act explicitly announced that the required policy of insurance was "for the protection of the public." 189 So. at 62 (after framing the issue as whether the injured party's rights are primary, noting that, "[b]y the express terms of the Ac[t] of 1932 …, the policy of insurance shall be for the protection of the public."); *id*. (the 1932 Act does not expressly authorize suit by an injured party against the

7

insurer, "[b]ut the Act of 1932 is made expressly for the protection of the public.").

The insurer complained that, unlike its 1931 counterpart, the 1932 Act did not expressly require the insurer to pay any judgment rendered against its insured "notwithstanding any provisions in such insurance policy to the contrary" and did not expressly authorize an action by the injured party against the insured. 189 So. at 62. The Supreme Court brushed off these concerns: "If the purpose of the Act shows an intent to protect the public on account of such injury to the extent that it is not subject to stipulations applicable between the assured and insurer, it will be given that construction if its language is broad enough to sustain such a construction." *Id*.

But there was more. Independent of the 1932 Act, "[t]he contract itself fully recognizes the possibility of liability to the public when none exists to the assured," as shown by its provision requiring the insured to reimburse the insurer should the insurer be obliged to pay an injured party due only to the 1932 Act. *Id*. at 60, 63. Such a provision "could be well supported on the theory that it creates a dual relation, one to the public and another and different one to the assured." *Id*.

In *Dime Taxi*, a cab driver was killed and his passenger injured in a traffic accident. 151 So. 2d at 784. The passenger sued the driver's employer and received judgment in her favor based on the driver's negligence. *Id*. The employer then sued the driver's insurer. The insurer defended on the grounds that its policy required a judgment against the insured as a condition precedent to suit against it, and neither the passenger nor the employer had sued the driver or his estate. *Id*. at 785.

The Supreme Court noted that the driver's policy was issued pursuant to the Motor Vehicle Financial Responsibility Act ("the Act"), as a condition to reinstatement of the driver's revoked license. 151 So. 2d at 784, 786. The Court emphasized that the Act "is for the protection and benefit of the public" and that the certificate of insurance required by the Act likewise "is for the benefit and

protection of the public rather than for the benefit of the person seeking reinstatement of his license." *Id*. at 786-87.

It is not clear that the Act itself expressly stated that it or its insurance requirement was for the protection of the public, but the Act did expressly provide that "'no violation of said policy shall defeat or void such policy,'" and it also provided that "the insurance becomes absolute whenever 'injury or damage' occurs," not when judgment against the insured occurs. 151 So. 2d at 786 (quoting the Act). The Act therefore affirmatively precluded the enforcement of policy conditions, both in general and the specific one on which the insurer relied.

The plaintiffs here "aver that the logic [of *Johnston* and *Dime Taxi*] should be controlling in the present case." (Doc. 52 at 13). They point to a rule promulgated by the Commission that requires manufactured home installers such as Visionary to "hold … general liability coverage," and to the Commission's statement that "[t]he purpose of this rule is to ensure that … installers are adequately … insured to assist homeowners in situations when a[n] .. installer has gone out of business or failed to meet their legal or regulatory responsibility to the consumer." Ala. Admin. Code r. 535-X-15-.01, -03 (2012).

As a federal court sitting in diversity with no definitive ruling by the relevant state's highest court, the Court must predict how that body would resolve the issue if presented to it. *E.g., Molinos Valle del Cibao v. Lama*, 633 F.3d 1330, 1348 (11th Cir. 2011). For several reasons, the Court predicts that the Alabama Supreme Court would not relieve the plaintiffs from the consequences of Visionary's failure to give notice.

First, both *Johnston* and *Dime Taxi* involved statutes that, either expressly or by necessary implication, required a target group to maintain liability insurance "for the protection of the public." The plaintiffs have pointed to no statute at all, only to an administrative regulation.

Second, the regulation does not use the phrase, "for the protection of the public," or some variant of it. Instead, the regulation states the insurance rule is

"to assist homeowners." Assistance is not clearly the same as protection, and homeowners are not clearly the same as the public.

Indeed, a good argument can be made that the class of homeowners under the regulation falls far short of the public under the statutes at issue in *Johnston* and *Dime Taxi*, both in size and in status. As to size, the "public" under those statutes was all motorists in the state, which even in those days numbered in the hundreds of thousands (if not millions), while the number of purchasers of manufactured housing is miniscule in comparison.[5] As to status, those injured by negligent drivers are usually strangers to the tortfeasor,[6] while homeowners injured by unperforming manufactured housing installers have chosen to enter contractual relations with the installer and thus have both chosen to risk non-performance and possessed the opportunity to protect themselves from that risk.

Third, neither *Johnston* nor *Dime Taxi* makes "protection of the public," of itself, a sufficient basis for concluding that a member of the public has primary rights under a policy to which it is a stranger. Rather, the statute must evince an intent to protect the public "to the extent that it is not subject to stipulations applicable between the assured and insurer." *Johnston*, 189 So. at 62. In *Dime Taxi*, that "something extra" was an express statutory prohibition on defeating liability coverage based on the insured's policy violations. In *Johnston*, there was the policy's recognition that the 1932 Act could result in liability to an injured party despite the insured's breach of policy conditions. The plaintiffs here have cited nothing comparable and so have not shown that the regulation reflects an intent to protect the public to such a heightened extent as to render immaterial the breach of policy conditions.

---

[5] Especially since the plaintiffs acknowledge that the regulation does not cover mobile homes. (Doc. 52 at 14-15).

[6] Under the 1932 Act, this would almost always be true, since passengers and shippers were excluded from the public being protected. *Johnston*, 189 So. at 61.

Fourth, the plaintiffs assert that the Alabama Legislature and various state agencies have a quarter-century "trend of requiring liability insurance for the protection of the public." (Doc. 52 at 13). Despite all these statutes and regulations, on the books for an extended period, and despite the hoary if vague precedent of *Johnston* and *Dime Taxi*, the plaintiffs identify no court that has ever suggested that any of these compulsory insurance provisions, or any others, grant the injured party primary rights sufficient to negate policy conditions.

There may be additional reasons to doubt that the Alabama Supreme Court would, after a half-century hiatus, extend *Johnston* and *Dime Taxi* to other situations, but the foregoing discussion satisfies the Court that it would not do so in this case.

**B. Prejudice.**

As noted in Part I.A, in evaluating compliance with a notice condition, "the only factors to be considered are the length of the delay in giving notice and the reasons therefor. Absence of prejudice to the insurer from the delay is not a factor to be considered." *Estate of Files*, 10 So. 3d at 535 (internal quotes omitted); *accord Pharr v. Continental Casualty Co.*, 429 So. 2d 1018, 1020 (Ala. 1983); *Southern Guaranty Insurance Co. v. Thomas*, 334 So. 2d 879, 883 (Ala. 1976). The plaintiffs acknowledge the rule but argue an exception should be made in this case. (Doc. 52 at 15-19).

The plaintiffs point out that the Alabama Supreme Court has made an exception to the general rule in the context of uninsured motorist coverage. (Doc. 52 at 16 (citing *State Farm Mutual Automobile Insurance Co. v. Burgess*, 474 So. 2d 634 (Ala. 1985)). And so it has, but the *Burgess* Court "emphasize[d] that the use of prejudice as bearing on reasonableness of delay applies only to uninsured motorist cases. Those situations dealing with liability coverage are still governed by *Thomas* and *Pharr* …." 474 So. 2d at 637. Moreover, the *Burgess* Court recognized that "the difference between the two types of insurance" called for a

special rule in the uninsured motorist context, *id*., which reflects that the Supreme Court would not extend *Burgess* to the liability context if asked to do so.

Unfazed, the plaintiffs suggest the Supreme Court would abandon its longstanding rule treating prejudice vel non as irrelevant because the majority view is contrary. (Doc. 52 at 17 (citing *Jones v. Bituminous Casualty Corp.*, 821 S.W.2d 798, 801 (Ky. 1991)). But the Supreme Court in *Estate of Files* reaffirmed its rule in 2008, just five years ago and almost 20 years after *Jones* pronounced Alabama in the minority, so a sudden reversal of position to avoid minority status does not appear likely.

Finally, the plaintiffs argue the Court should consider prejudice vel non because Visionary was required by law to carry insurance and was required to do so for the protection of the public. (Doc. 52 at 18). As discussed in Part I.A, the plaintiffs have not shown that Visionary's insurance was for the protection of the public in any legally meaningful sense. Nor have they provided any argument why this circumstance makes it likely the Alabama Supreme Court would carve out an exception to its rule making prejudice irrelevant.

**II. Count Four.**

In *Stewart v. State Farm Insurance Co.*, 454 So. 2d 513 (Ala. 1984), the plaintiff injured party sued the tortfeasor's liability carrier "on the theory that he was a third party beneficiary of the insurance contract between" the insurer and its insured. *Id*. at 514. The Supreme Court held that the plaintiff "is seeking to maintain a direct action against defendant Braddock's insurer. This is not permitted in Alabama." *Id*. Since Count Four is likewise based on the plaintiffs' alleged status as third party beneficiaries of the Policy, CastlePoint argues that *Stewart* bars the claim. (Doc. 49 at 28-29).

The plaintiffs do not address *Stewart* but insist that *Dime Taxi* permits them to sue. (Doc. 55 at 29). It is doubtful that *Dime Taxi* addresses suit under a third party beneficiary theory but, in any event, and as discussed in Part I.A, *Dime Taxi*

12

does not support the existence of a direct action against CastlePoint under the circumstances here presented.

## CONCLUSION

For the reasons set forth above, CastlePoint's motion to dismiss is **denied** and its alternative motion for summary judgment is **granted**. Judgment shall be entered accordingly by separate order.[7]

DONE and ORDERED this 13th day of September, 2013.

s/ WILLIAM H. STEELE<br>CHIEF UNITED STATES DISTRICT JUDGE

---

[7] CastlePoint's motion to strike, (Doc. 54), is **denied as moot**, as the Court has not considered the exhibit challenged therein.